## Matt Sisk v. The State.

*No. 2860.    Decided March 12.*

1. **Perjury.**—Indictment for perjury is sufficient as to materiality if it charges generally that the statements upon which perjury is assigned are material without alleging facts which show them to be so. See the statement of the case for the charging part of an indictment for perjury *held* sufficient.

2. **Same—Charge of the Court.**—It was not error for the court in its charge to select from among the several statements assigned as perjury that which was material, and submit it to the jury.

3. **Same—Evidence.**—See the statement of the case for evidence *held* to support the allegation that the house described in the indictment was an out house where persons resorted for the purpose of card playing.

4. **Same—Charge of the Court.**—It was objected to the charge of the court that it omitted to submit to the jury the question of the intoxication of the accused at the time he made the alleged false statement, or at the time of the card playing. But the court charged the statutory principle that "a false statement made through inadvertence, or under agitation, or by mistake, is not perjury." *Held*, that the omission was not error; and that the charge as given was sufficient to require the jury to consider the mental condition of the accused at the time he made the statement or at the time the cards were played.

5. **Same—Evidence.**—As bearing directly upon the issue, the State was properly permitted to prove that defendant testified before the grand jury that he had not seen any card playing in the room described in the indictment.

6. **Same.**—The foreman of the grand jury which presented the indictment against the accused was introduced as a witness by the State, and as a means of refreshing his memory as to the statements of the accused before the said grand jury was permitted to read the indictment, to which proceeding the defense objected. *Held*, that the proceeding was not error.

7. **Same—Practice.**—The admission of testimony immaterial to the issue and harmless in its effect does not constitute material error.

8. **Same.**—An accused can not be heard to complain of the rejection of defensive testimony which was irrelevant and immaterial and could not affect the result of the trial.

9. **Same.**—The defense proposed to prove what a grand juror said in the grand jury room at the time defendant testified before the said grand jury about the defendant then being in an intoxicated condition. *Held*, that the proposed proof was properly excluded as mere hearsay, and as not coming within the rule of *res gestæ* under the facts of this case.

10. **Practice—Continuance.**—In the absence of a bill of exception to the ruling,

this court will not revise the action of the court below in refusing an application for continuance.

11. Same—Postponement.—Even though material, if the absent testimony relied upon for postponement of the trial does not appear to be probably true, the postponement is properly refused.

APPEAL from the District Court of Parker. Tried below before Hon. J. W. Patterson.

The appellant was awarded a term of five years in the penitentiary upon his conviction for perjury under an indictment, the charging part of which reads as follows:

* * * "Matt Sisk, on or about May 23, 1889, in the county and State aforesaid, did then and there personally appear before the duly organized grand jury for said county, which was then and there in session for the May Term of the District Court for said county, and of which said grand jury W. J. Carson was then and there the legally appointed foreman; and the said Matt Sisk did then and there take his corporal oath and was duly sworn as a witness before said grand jury, said oath being then and there duly administered to him by the said foreman of the said grand jury, who was then and there authorized by law to administer the same, and which said oath was so administered for the ends of public justice; whereupon it then and there became and was a material inquiry before said grand jury, and necessary for the due administration of the criminal law of said State, whether the said Matt Sisk had seen any cards played in Frank Hathaway's room, in the town of Weatherford, in said county and State, which said room was then and there an out house where people did then and there resort; and whether he, the said Matt Sisk, had played cards in said room since the first day of September, 1888, with several persons, among whom were Ab Lewis and Ben Hartgraves, about the month of April, 1889; and the said Matt Sisk did, on the day hereinbefore first named, in said county, before and to the said grand jury, under the sanction of said oath, administered to him as aforesaid, willfully and deliberately state and testify that he had not seen any cards played in the town of Weatherford, in said county and State, since the first day of September, 1888, in Frank Hathaway's room, and that he had not played cards in said town of Weatherford and in Frank Hathaway's room since the first day of September, 1888, and that he did not play cards about the month of April or in the month of April, 1889, with Ab Lewis and Ben Hartgraves or either of them, in said Frank Hathaway's room, in said town of Weatherford, in said county and State; whereas in truth and in fact the said Matt Sisk had seen cards played in Frank Hathaway's said room in said town of Weatherford and in said county of Parker, State aforesaid, since the first day of September, 1888; and the said Matt Sisk did play cards in or about the month of April, 1889, in said Frank Hathaway's said room, in the town, county, and State aforesaid, with Ab

Lewis and others, which said room was then and there an out house where people did then and there resort; which said statements so made by the said Matt Sisk before and to the grand jury, as aforesaid, were willfully and deliberately false, and the said Matt Sisk knew them to be false when he made them—against the peace and dignity of the State."

The State first introduced in evidence the minutes of the District Court of Parker County for the May Term, 1889, showing the organization of the grand jury as charged in the indictment.

W. J. Carson, the foreman of the grand jury before which the perjury was alleged to have been committed and which returned this indictment, was the first witness for the State. He stated that unless he was permitted to read the indictment to refresh his memory he could not repeat the forms of the questions propounded by him to the defendant when the defendant testified before the grand jury. Over the objections of defendant he was permitted to read the indictment. He then stated that after administering the oath to defendant he asked defendant if he saw any card playing in Frank Hathaway's room in Weatherford, Parker County, Texas, subsequent to September 1, 1888, and if he played cards in that room with Ab Lewis or Ben Hartgraves and others on or about April 1, 1889, or during said month. In reply to these questions the defendant replied promptly in the negative. Witness designated the Hathaway house to defendant, and read to him from the statutes to show him that he would not criminate himself by testifying about the matter. Defendant did not appear to the witness to be drunk when he testified before the grand jury. Two other members of the grand jury testified to substantially the same facts, corroborating Carson in every particular.

Two witnesses, Bell and Buchanan, testified that they played poker with cards in Frank Hathaway's room in Weatherford on the 23d day of April, 1889. Defendant, Ben Hartgraves, and Ab Lewis played in the same game. Defendant quit the game before it closed and went to sleep on Hathaway's bed. The entire party drank whiskey during the game, the defendant, more than the others, becoming affected by the liquor. Buchanan testified that after he was indicted for playing that game, and while his case was pending, defendant asked him what he was going to swear in' court about the matter. Witness replied that he was going to tell all about it, and defendant replied that he did not blame witness for telling the truth about it, but that he was so drunk when he played he did not know what he was doing; that when he woke up on Hathaway's bed on that evening he was at a loss to know when or how he got there. The house in which was Hathaway's room stood on Austin Avenue, about forty feet north of the saloon on the northeast corner of the square. The ground floor was partitioned off into three rooms, the front room being Hathaway's room, and the one in which the games were played. That room contained a bed, table, washstand, bookcase, chairs, etc. The other two rooms contained

nothing but a number of mattresses. A shed room adjoined the house, which until recently before the playing had been occupied by Ed Boyd as a restaurant.

Ed Boyd testified for the State that he occupied the shed room adjoining Hathaway's room as a restaurant until April 16, 1889. Witness often had orders to serve oysters in Hathaway's room as late as midnight. As often as he went into that room he saw several parties sitting around, but never saw any card playing. People went in and out of that room with great frequency while witness kept that restaurant. It was a common thing for the young men about town to have oysters served in their bed rooms after night. State closed.

W. C. Patterson testified for the defense that he was the proprietor of a hotel in Weatherford, situated about 100 feet north of the Hedrick building, of which said building Hathaway's room was a part. Witness rented the said Hedrick building about November 1, 1888, and occupied it in part as a storage house for furniture until about January 1, 1889. Frank Hathaway occupied the first room on the ground floor as a sleeping apartment when the witness first rented it, and continued to so occupy it during witness's tenancy. He continued to occupy the said room under Mr. Miller, who succeeded witness as landlord. Witness again rented the building about the middle of April, 1889, and Hathaway continued to occupy the said room until about May 1, when witness rented the entire ground floor to a business firm. During all of the time covered by this testimony Hathaway boarded at the witness's hotel. The witness visited Hathaway's room very often, but never saw a game of cards played, nor a deck of cards in the room. The room was furnished as a gentleman's sleeping room.

James Gibson testified for the defense that he saw the defendant when he was taken before the grand jury on the day alleged in the indictment. He was then so drunk that he was unable to walk without staggering.

H. S. Sisk, sheriff of Parker County, and uncle of the defendant, testified in his behalf that on the day of the alleged card playing in Hathaway's room he, witness, was informed of the playing and that defendant was participating in the game. Witness went to the Hedrick building with the intention of breaking into Hathaway's room and arresting the parties, but concluded that the room was a private sleeping apartment and decided that he had no authority to enter it by force. Defendant was very drunk at the time of the card playing. He was drinking heavily when called before the grand jury in May, 1889, but witness could not say how drunk he was on that occasion. Very little whiskey would affect the defendant. The defense closed.

Two witnesses for the State testified in rebuttal that they saw the defendant during the time he was before the grand jury; that they observed him closely, and did not think he was drunk.

*Albert Stevenson* and *H. W. Kuteman*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WILLSON, JUDGE.—We do not think the exceptions to the indictment are maintainable, and we hold, therefore, that they were correctly overruled. It is charged that the statements upon which perjury is assigned were material, and this general averment is sufficient without alleging the facts which show materiality. Washington v. The State, 22 Texas, Ct. App., 26; Partain v. The State, Id., 100. With respect to the allegations as to the character of the house in which the card playing occurred, we think they show, when considered in connection with the allegations of materiality, that said house was an out house where people resorted at the time of card playing.

In the charge to the jury the judge designated the material statement assigned as perjury, said statement being that defendant "did not play cards about the month of April, or in the month of April, A. D. 1889, with Ab. Lewis and Ben Hartgraves, or either of them, in the said Frank Hathway's room, in said town of Weatherford, in said county and State." It was proper for the court to thus designate from among the several statements assigned as perjury that which was material, and submit it alone to the jury. Washington v. The State, 23 Texas Ct. App., 336; Jackson v. The State, 15 Texas Ct. App., 579; Donaho v. The State, 14 Texas Ct. App., 638.

We think the evidence sustains the allegation in the indictment that at the time the card playing occurred the house in which it occurred, known as Hathway's room, was an out house where people resorted, within the meaning of the statute prohibiting card playing in such houses. Penal Code, art. 355. The fact that the room in which the card playing occurred was occupied at the time as a bed room did not prevent it from being an "out house" within the meaning of that term as used in the statute. As we understand the construction placed upon the term "out house" by our Supreme Court in the cases of Wheelock v. The State, 15 Texas, 253, 257, 260, the house in question in this case was an "out house" at the time of the card playing.

"A false statement made through inadvertence, or under agitation, or by mistake, is not perjury." Penal Code, art. 189. This provision of the law was given in charge to the jury, and it was unnecessary, we think, that the jury should have been instructed as to the intoxication of the defendant at the time he made the alleged false statement, or at the time the card playing occurred. It was for the jury to determine from the evidence whether or not the alleged false statement was wilfully and deliberately made, or whether it was made through inadvertence, or under agitation, or by mistake, and in determining this they would, of course, take

into consideration the mental condition of the defendant at the time he testified and at the time of the card playing.

Defendant's bill of exception No. 3 shows no error. It was competent for the State to show that the defendant testified before the grand jury that he had not seen any card playing in Frank Hathaway's room. Such testimony bore directly upon the issue in the case, and was in support of the allegations in the indictment.

It was not error to permit the witness Carson to read the indictment, and thereby refresh his memory as to the statements made by the defendant when testifying before the grand jury. White v. The State, 18 Texas Ct. App., 57; Hubby v. The State, 8 Texas Ct. App., 597. Said Carson, after examining the indictment, testified from memory as to defendant's said statements.

Bill of exception No. 6 shows no material error. The question and answer complained of were immaterial to the issue submitted to the jury, and were harmless.

Bills of exception Nos. 7 and 8 show no error, as the rejected testimony was irrelevant and immaterial, and could not legitimately have affected the result.

Bill of exception No. 10 shows no error. It was not competent for the defendant to prove what a grand juror said in the grand jury room, at the time defendant testified there, as to the defendant being then in an intoxicated condition. Such testimony would have been mere hearsay, and not within the rule of *res gestæ* under the facts of this case.

There is no bill of exception in the record to the overruling of defendant's application for a continuance, and we are therefore not required to revise that ruling.

We can not say that any error was committed in refusing defendant's application to postpone the trial to enable him to obtain the testimony of the witness Pickard—that is, any such error as entitles the defendant to have the conviction set aside. While the absent testimony may be regarded as material, we can not say, in view of the evidence adduced on the trial, that it was probably true. On the contrary the truth thereof appears to us to be improbable.

We have carefully considered each of the supposed errors presented in the record, and our conclusion is that no good reason appears for a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Hurt, J., absent.